```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
KATHRYN M. RIVAS,
                          Plaintiff,              07-CV-6288T

v.                                                DECISION
                                                  and ORDER
MICHAEL ASTRUE,
Commissioner of Social Security,

                          Defendant.
_____
```

## INTRODUCTION

Plaintiff, Kathryn Rivas ("Rivas") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On January 11, 2008, plaintiff moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on January 15, 2008, the Commissioner cross-moved for judgment on the pleadings. For the reasons that follow, I find that substantial evidence supports the decision of the ALJ. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

## BACKGROUND

Plaintiff is a 54 year old woman with an eighth grade education. (Tr. 323) She alleges that she has been disabled since August 31, 2001 because of emphysema, injury to her right wrist and

depression. (Tr. 68)  On April 28, 2004, Rivas filed an application for Disability and SSI. (Tr. 38-44, 299-304) Her application was denied on July 29, 2004. (Tr. 26-29) Plaintiff requested a hearing which was held on June 21, 2006 at which plaintiff appeared by video conference before an Administrative Law Judge ("ALJ") and was represented by counsel.  (Tr. 316-351) By decision dated September 12, 2006, the ALJ found Rivas was not disabled. (Tr. 9-24) Plaintiff requested review by the Appeals Council.  The decision of the ALJ became final when the Appeals Council denied review on April 23, 2007.   (Tr. 5-7) Plaintiff commenced this action on June 11, 2007.

A.   Medical Background

Rivas is an overweight woman who smokes half of a pack of cigarettes a day and is borderline diabetic. (Tr. 129) She was diagnosed Chronic Obstructive Pulmonary Disease, asthma and mild depression. (Tr. 129)

Rivas was first treated for respiratory distress on July 1, 2002 when she presented to the emergency room at F.F. Thompson Hospital with difficulty breathing and for way history of a dry cough. (Tr. 99) She was treated with a Ventolin inhaler and prednisone and directed to follow up with Dr. Kokx in two days. (Tr. 99)

On November 1, 2002, Dr. Matther Tomaino, an orthopaedist at Strong Health Clinic, treated Rivas for right wrist pain stemming

2

from an injury on August 3, 2001 at the winery where she worked. (Tr. 109) Rivas felt a pop in the ulnar side of her wrist when she tried to pull a wine bottle out.  Dr. Tomaino diagnosed plaintiff with an ECU tendonitis and a sheath injury. (Tr. 109) He injected her with cortisone and recommended wearing a wrist brace. (Tr. 109)

On December 13, 2002, Dr. Tomaino examined plaintiff who was seeking right ECU tenosynovectomy, debridement and retinaovacular sheath reconstruction. (Tr. 108) Dr. Tomaino noted that plaintiff had no pain when supine.  He diagnosed her with ECU tenosynovitis. (Tr. 107) Dr. Tomaino performed the right ECU tenosynovectomy and sheath repair on March 13, 2002. (Tr. 106)   Ten months following the procedure, Dr. Tomaino noted that plaintiff had no intrinsic weakness, full supination and pronation and no ECU instability. (Tr. 100) Examination found that Rivas has cubital tunnel Tinel's with no atrophy nor sensory deficits. (Tr. 101) He noted that Rivas had achieved maximal medical improvement finding that she had a permanent restriction of lifting no greater than 20 pounds which placed her at "partial disability". (Tr. 100)

On April 20, 2004, Dr. Kristen Bissell completed a Medical Examination for Employability Assessment, Disability Screening and Alcoholism/Drug Addiction Determination in which she indicated that Rivas had moderate limitations in standing, walking, climbing stairs, maintaining attention, and concentration and determined that plaintiff could lift no more than 20 pounds. (Tr. 142-143)

Plaintiff was admitted to F.F. Thompson Hospital on May 4, 2003 after presenting to the Emergency Department with shortness of breath, cough, and chills. (Tr. 111) She was diagnosed with asthma and Chronic Obstructive Pulmonary Disorder, given antibiotics and Albuterol and discharged on May 9, 2003 with directions to take Nicoderm to stop smoking, prednisone, Advair and Albuterol to control breathing problems. (Tr. 110)

Rivas was evaluated by clinical psychologist, Dr. Vince Ragonese, for depression on June 3, 2004. (Tr. 145) She was prescribed Wellbutrin. (Tr. 144)

An independent medical examination was conducted on June 15, 2004. (Tr. 149-153) During the examination, plaintiff claimed that she still experienced pain on the ulnar side of the right wrist, especially with repetitive use of the right hand. (Tr. 150) Rivas was taking Singulair, Wellbrutrin and Combivent at that time. (Tr. 150) Plaintiff was able to walk without difficulty, had full flexion and extension of the cervical spine, had full grip strength but was diagnosed with bronchial asthma, history of chronic obstructive pulmonary disease, hypercholesterolemia, cartilage injury of the right wrist joint and a history of depression. (Tr. 152) The examining physician concluded that plaintiff should avoid smoke, dust and other pulmonary irritants and was "moderately limited in repetitive and forceful use of the right hand". (Tr. 153)

Plaintiff had an independent psychiatric evaluation performed on June 15, 2004. (Tr. 160-163) Plaintiff reported no psychiatric hospitalizations nor outpatient treatment but had been treated by her primary care physician for one year with Wellbutrin for depression. (Tr. 160) Plaintiff's pulmonary function tests set her FVC value at 2.27 (77% predicted), FEV1 of 1.83 (74% predicted) and an FEV1 of 81 (98% predicted). (Tr. 155-157)  The evaluation found plaintiff to have "mild to moderate" major depressive disorder. (Tr. 162) Her prognosis was judged to be "fair to good with continued medication management." (Tr. 162)

A Residual Functional Capacity report dated July 28, 2004 found that plaintiff could occasionally lift or carry up to 20 pounds, could frequently lift or carry 10 pounds, could sit, stand or walk about six hours in an eight hour day, and plaintiff had no postural, visual nor communicative limitations. (Tr. 165-167) Plaintiff's residual capacity was determined to be light work without repetitive movement of the right wrist. (Tr. 168) Plaintiff's mental residual functional capacity was found to have only "mild" limitation on plaintiff's ability to maintain social functioning but no limitation on her daily activity, ability to concentrate or pace. (Tr. 180)

Plaintiff was examined by her treating physician in June, 2005 for follow up on Bell's palsy, cholesterol and diabetes. (Tr. 201) Plaintiff was 5'2" tall and weighed 260 pounds. (Tr. 322)

Dr. Laurel Dallmeyer prepared a Physical Residual Functional Capacity Questionnaire based on her treatment of Rivas. (Tr. 289-293) She noted that plaintiff suffers from depression and anxiety as well as fatigue, shortness of breath and pain in the wrists and knees. (Tr. 289-290) Dr. Dallmeyer indicated that plaintiff's depression and anxiety limited her to performing low stress jobs. She also concluded that plaintiff could sit for no more than ten minutes at a time and stand for no more than 30 minutes at one time. (Tr. 290) Dr. Dallmeyer concluded that Rivas needs a job that permits shifting positions at will from sitting to standing to walking and that she would need unscheduled breaks during an 8 hour day. (Tr. 291) She opined that plaintiff could lift less than 10 pounds only "rarely." (Tr. 291)

Plaintiff testified that her primary disability stems from soreness in her right hand. (Tr. 328) She still experiences soreness after lifting or pushing twenty pounds or more. (Tr. 329) Rivas also testified that she suffered from Chronic Obstructive Pulmonary Disease and asthma. (Tr. 330) She was hospitalized once in 2003 for breathing problems. (Tr. 330) She treated her asthma with Combivent and Advair. (Tr. 330) Plaintiff also took Koolikan to control diabetes. (Tr. 330) Plaintiff testified that the machine she used to treat sleep apnea improved the condition. (Tr. 331) Rivas also took Wellbutrin for depression. (Tr. 332) Plaintiff testified that she had difficulty standing or sitting for extended

periods of time but that she knew of no physical problem to cause the limitation. (Tr. 333)

B.   Non-Medical Background

Plaintiff's prior work experience includes cleaning, work in a recycling center and a factory. (Tr. 160) She worked in 2005 for a cleaning crew doing janitorial work that did not involve heavy lifting or carrying. (Tr. 325) As a factory worker from 1990 through 2001, plaintiff worked in wine and water bottling production.  This jobs involved lifting and carrying five to ten pounds boxes of empty bottles. (Tr. 326) She also applied labels to the bottles, capped bottles and operated a machine. (Tr. 326)

Rivas explained that she cooks meals, cleans the house, does her own laundry and shops for food and clothing. (Tr. 150, 336) She walks to the supermarket and drugstore, a couple blocks from her house. (Tr. 340)

Rivas is able to drive and has a driver's license. (Tr. 323) she testified that she could not read or write well and that she could not make change from a twenty dollar bill. (Tr. 324)

A vocational expert, Gary Young, testified at the hearing. (Tr. 341) Mr. Young characterized plaintiff's prior work experience with the wine and water bottling companies as a material handler that is semiskilled and heavy work. (Tr. 343) Her work as a housekeeping cleaner is unskilled and considered a light job. (Tr. 343)  Given the hypothetical of an individual at the age of

52, limited education and work experience as plaintiff who would be limited to lifting or carrying 20 pounds occasionally, ten pounds frequently, stand or walk for six hours out of an eight hour day and sit six hours our of an eight hour ay and is limited to frequent pushing or pulling with the right arm and can not be exposed to fumes, odors, dust, gases and poor ventilation, Mr. Young testified that such an individual could not perform plaintiff's past relevant work as a materials handler. (Tr. 345) However, he noted that there were other jobs in the United States, regional or local economy for this person. (Tr. 345) Mr. Young identified such jobs available to this individual as a housekeeping cleaner position, cashier position and an office helper. (Tr. 345) If the hypothetical individual could also only push or pull with their dominant hand occasionally and only handle things occasionally with this hand, that individual could not perform these jobs but would qualify for the job of gate guard or locker room attendant. (Tr. 345)

As a third hypothetical, the vocational considered an individual who is limited to lifting and carrying ten pounds occasionally, less than ten pounds frequently, standing or walking two hours out of an eight hour day, sitting six hours out of an eight hour day, limited to frequent pushing, pulling with the right arm, frequent handling with the right hand and needs to avoid concentrated exposure to fumes, odors, dust, gases, poor

ventilation and is limited to unskilled work.  Mr. Young suggested that this individual could perform an assembly position, telephone survey worker and office clerical work. (Tr. 346-47) If this individual were further limited to pushing and pulling with the right arm occasionally and handling with the right arm occasionally, there would be no jobs available. (Tr. 347)

Mr. Young considered the limitations as set forth in the Residual Functional capacity questionnaire completed by Dr. Dullmeyer and the opinion of Dr. Dullmeyer dated June 6, 2006 regarding plaintiff's ability to do work-related activities and concluded that given those limitations there would be no jobs available to plaintiff. (Tr. 348)

## DISCUSSION

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).  A disability is defined as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual's physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

>experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits her ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform her past work. If she is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure. In his decision dated September 12, 2006, the ALJ found that plaintiff

(1) had not engaged in substantial gainful activity since the onset date of August 31, 2001; (2)suffered from Chronic Obstructive Pulmonary Disease, status-post right wrist injury, obesity and diabetes mellitus that are severe impairments; (3) did not have an impairment that meets or equals one of the listed impairments listed in Appendix 1, subpart P, Regulation No. 4; (4) has the residual functional capacity to lift/carry 20 pounds occasionally and ten pounds frequently, stand/walk for six hours of an eight hour day, sit for six hours of an eight hour day and perform jobs not requiring exposure to fumes, odors, dusts, gases or poor ventilation; (5) did not have the residual functional capacity to perform her past relevant work; and (6)there are a significant number of jobs in the national economy that she could perform such as housekeeping, cleaner, cashier, office helper, gate guard and locker room attendant. (Tr. 11-19)

Plaintiff alleges that the ALJ did not have substantial evidence to support his finding that plaintiff was not disabled. She contends that (1) the ALJ failed to give proper weight to plaintiff's physicians' opinions; and (2) the ALJ failed to consider the additional and cumulative effect of obesity on plaintiff's other conditions.

Plaintiff alleges that the ALJ erred for failing to give controlling weight to the opinions of plaintiff's treating physicians.

11

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed below as well as the factors in paragraphs(d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2).

The ALJ considered the medical records and found that plaintiff suffered from Chronic Obstructive Pulmonary Disease, status post right wrist injury, obesity and diabetes mellitus and that these impairments are "severe" within the meaning of the Regulations but that she retained the residual functional capacity to perform light work. (Tr. 13-19)

In determining the weight to be given to medical source opinions, including treating source opinions which are not afforded controlling weight, the Commissioner considers the existence of an examining relationship, the existence of a treatment relationship, the presence of supporting clinical and laboratory findings, consistency with the record as a whole, specialization and any other relevant factors. 20 C.F.R. § 404.1527(d).

Substantial evidence supports the ALJ's conclusion that Dr. Bissell's and Dr. Dallmyer's opinions of disability were not controlling. (Tr. 17) The opinions of treating sources are

entitled to controlling weight if they are well supported and not contradicted. 20 C.F.R. §§ 404.1527 and 416.927. However, the ALJ is not required to give controlling weight to treating physicians' opinions as to whether the claimant is disabled or unable to work. 20 C.F.R. § 404.1527(e)(1) and (3).

The ALJ gave "little weight" to the reports of Dr. Bissell and Dr. Dallmyer that precluded light work and sustained work activity. (Tr. 17) He specifically noted that these reports are inconsistent with plaintiff's reports of daily activities, with objective medical evidence and treatment records. (Tr. 17) The ALJ noted that the reports had no explanations nor specific medical signs and findings to justify the limitations. (Tr. 17).

Although Dr. Bissell and Dr. Dallmyer opined that the plaintiff was unable to stand and walk for prolonged periods, the ALJ noted that Rivas exhibited a normal gait with normal lower extremity strength at the examinations. Pulmonary function testing and treatment records do not show severe respiratory impairment and her symptoms were controlled with medication. Indeed, the ALJ noted that plaintiff's other treating physician, Dr. Tomaino, recorded that plaintiff had a permanent restriction of no lifting greater than 20 pounds. This Court finds substantial evidence to support the ALJ conclusion that the opinions of Dr. Bissell and Dr. Dallmyer are not entitled to controlling weight because they

are inconsistent with objective medical and treatment records and plaintiff's own reports of daily activities.

Plaintiff's assertions that the ALJ failed to consider the cumulative effects of obesity on plaintiff's functional capacity and the opinions of Dr. Bissell and Dr. Dallmyer is not founded. When determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing an individual's residual functional capacity, the ALJ must consider the additional and cumulative effects of obesity. Here, the ALJ considered plaintiff's claims that obesity limits her ability to sit and stand.  Indeed, it is based on obesity that the ALJ concluded that plaintiff is limited to performing light work activity.  However, considering the entirety of the record, the ALJ concluded that Rivas was not completely disabled based on the objective medical evidence, treatment records and plaintiff's activities of daily living. (Tr. 16) Plaintiff drives a car, cooks and cares for herself.  Dr. Bissell concluded that plaintiff had no limitations with sitting, could walk normally, and had few limitations in performing work related mental activities. (Tr. 142-143)  Plaintiff was able to ambulate effectively and while obesity certainly could contribute to difficulty in breathing, the medical findings do not show that plaintiff's pulmonary function disabled her.

CONCLUSION

I find substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.


                                    S/Michael A. Telesca
                                _____
                                      MICHAEL A. TELESCA
                                  United States District Judge

DATED:   Rochester, New York
         May 19, 2008